**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 23-356 _____ Caption [use short title] _____

Motion for: Leave to file supplemental appendix

Volokh v. James

Set forth below precise, complete statement of relief sought:

Plaintiffs-Appellees were granted leave by this Court on February 6, 2024

to file a supplemental appendix containing documents filed

in the district court after the briefing in this appeal was completed.

Defendant-Appellant seeks leave to file a supplemental appendix

containing documents filed in the district court in response to the

documents included in Plaintiffs' supplemental appendix.

MOVING PARTY: Defendant-Appellant _____ OPPOSING PARTY: Plaintiffs-Appellees

☐ Plaintiff     ☑ Defendant

☑ Appellant/Petitioner     ☐ Appellee/Respondent

MOVING ATTORNEY: Sarah Coco _____ OPPOSING ATTORNEY: James M. Diaz

[name of attorney, with firm, address, phone number and e-mail]

New York State Office of the Attorney General, 28 Liberty St. New York, NY 10005 | Foundation for Individual Rights and Free Expression, 510 Walnut St., Suite 900, Philadelphia, PA 19106

sarah.coco@ag.ny.gov | jay.diaz@thefire.org

212-416-6312 | 215-717-3473

Court- Judge/ Agency appealed from: United States District Court, SDNY, Hon. Andrew J. Carter

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes  ☐ No
Has this relief been previously sought in this court?  ☐ Yes  ☐ No

Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

Is the oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☑ Yes  ☐ No  If yes, enter date: February 16, 2024

Signature of Moving Attorney:

Sarah Coco  Digitally signed by Sarah Coco Date: 2024.02.08 17:26:01 -05'00' Date: 2/8/24 _____  Service : ☑ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

**MOTION FOR LEAVE TO FILE A SUPPLEMENTAL APPENDIX**

On February 6, 2024, this Court granted plaintiffs-appellees leave to file a supplemental appendix containing a declaration and exhibits filed in the district court in support of plaintiffs' motion to enforce the district court's preliminary injunction order, enjoining enforcement of General Business Law (GBL) § 394-ccc. *See* Pls.-Appellees' Mot. (Feb. 5, 2024), CA2 ECF No. 123-1; Order (Feb. 6, 2024), CA2 ECF No. 126. In light of this Court's order, defendant-appellant the New York State Attorney General seeks leave to file a supplemental appendix containing the declaration and exhibits that the Attorney General submitted in the district court in opposition to plaintiffs' motion. If the Court considers the record of plaintiffs' still-pending motion to enforce the preliminary injunction order, it should consider the complete record. Plaintiffs do not oppose the Attorney General's motion.

In this appeal, the Attorney General seeks reversal of the district court's preliminary injunction. After the briefing in this appeal was complete, plaintiffs filed a motion in the district court to enforce the injunction, contending that the Attorney General violated the injunction prohibiting enforcement of GBL § 394-ccc by sending voluntary requests

1

for information to social media networks, including plaintiff Rumble Canada Inc., seeking information about the networks' responses to the proliferation of calls for violence against Jewish and Muslim people on social media in the aftermath of the October 7, 2023, terrorist attacks in Israel. The Attorney General opposed plaintiffs' motion in the district court, explaining that the requests for information from the networks about their response to the calls for violence—which had already been withdrawn as to Rumble at Rumble's request—were voluntary requests, not a subpoena pursuant to her authority to enforce the report-mechanism and policy-disclosure requirements of GBL § 394-ccc, and that plaintiffs were improperly seeking a new and broader injunction from the district court in the guise of enforcing the injunction order. Plaintiffs' motion remains pending before the district court.

"Ordinarily, material not included in the record on appeal will not be considered," and this Court should consider such material "only in extraordinary circumstances," *Keil v. City of New York*, No. 21-3043, 2022 WL 619694, at *4 n.6 (2d Cir. Mar. 3, 2022) (summary order) (quotation marks omitted) (denying leave to supplement the record where documents were irrelevant to the question of whether the district court

abused its discretion in addressing a motion for a preliminary injunction). Here, "extraordinary circumstances" do not warrant consideration of the materials in plaintiffs' supplemental appendix because plaintiffs' argument that the Attorney General violated the preliminary injunction after it was entered (which is without merit in any event) does not bear on whether the district court abused its discretion in entering the preliminary injunction. *See, e.g.*, *Hyde v. KLS Pro. Advisors Grp., LLC*, 500 F. App'x 24, 26 n.** (2d Cir. 2012) ("The preliminary injunction's legality must be adjudged on the evidence presented to the district court, not in light of any possible subsequent developments."); *Braude v. Zierler*, No. 22-1985, 2023 WL 3012269, at *2 (2d Cir. Apr. 20, 2023) (summary order) (denying motion to supplement the record with post-judgment evidence).

However, to the extent the Court considers the record on plaintiffs' motion to enforce the injunction in the district court in deciding this appeal, the Court should consider the entire record, including the Attorney General's declaration and exhibits filed in opposition to plaintiffs' motion, which were omitted from plaintiffs' supplemental appendix. *See, e.g.*, *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480

(1990) (concluding that it would be improper to supplement record on appeal without providing the opposing party "the opportunity of rebuttal"). Accordingly, pursuant to Federal Rule of Appellate Procedure 10(e)(2)(C) and this Court's inherent authority, the Attorney General seeks leave to file a supplemental appendix containing the declaration and exhibits submitted by the Attorney General in the district court in opposition to plaintiffs' motion. (*See* Decl. of Rick Sawyer (Dec. 15, 2023), SDNY ECF No. 49; *id.* Exs. 1-4 & 9 (Dec. 15, 2023), SDNY ECF Nos. 49-1, 49-2, 49-3, 49-4, 49-9.[1])

---

[1] Exhibits 5 through 8 of the declaration filed by the Attorney General in opposition to plaintiffs' motion in the district court, SDNY ECF Nos. 49-5 through 49-8, are omitted from the Attorney General's proposed supplemental appendix because they are duplicates of documents included in plaintiffs' supplemental appendix. *See* Pls.'-Appellees' Suppl. App. at 16-18, 22-38 (Feb. 5, 2024), CA2 ECF No. 123-2.

## CONCLUSION

For the foregoing reasons, the Court should grant the Attorney

General's motion for leave to file a supplemental appendix.

Dated: New York, New York
February 8, 2024

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellant

By:   */s/ Sarah Coco*
SARAH COCO
Assistant Solicitor General

BARBARA D. UNDERWOOD                28 Liberty Street
  *Solicitor General*               New York, NY 10005
JUDITH N. VALE                      (212) 416-6312
  *Deputy Solicitor General*
SARAH COCO
  *Assistant Solicitor General*
    *of Counsel*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rules 27 and 32 of the Federal Rules of Appellate Procedure, Oren L. Zeve, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 740 words and complies with the typeface requirements and length limits of Rules 27(d) and 32(a)(5)-(6).

<u>  */s/ Oren L. Zeve*      </u>
Oren L. Zeve

# 23-356

---

## United States Court of Appeals
## for the Second Circuit

---

EUGENE VOLOKH, LOCALS TECHNOLOGY INC., RUMBLE CANADA INC.,

*Plaintiffs-Appellees,*

v.

LETITIA JAMES, in her official capacity as Attorney General of New York,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

## DEFENDANT-APPELLANT'S SUPPLEMENTAL APPENDIX

---

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-8020

*Attorney for Appellant*

# TABLE OF CONTENTS

**Page**

Declaration of Rick Sawyer, dated December 15, 2023 .................................SA1

Ex. 1 - Referral Letter to Attorney General, dated May 18, 2022 ..........SA5

Ex. 2 - Subpoena Duces Tecum, dated June 17, 2022 ............................SA8

Ex. 3 - Letter from Willliam J. Stellmach to Office of Attorney
General, dated June 27, 2022 ....................................................SA29

Ex. 4 - Stellmach Email, dated July 21, 2022 ........................................SA31

Ex. 5 through Ex. 8 omitted

Ex. 9 - FIRE Press Release, dated October 20, 2023 .............................SA33

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE VOLOKH, RUMBLE CANADA INC.,
and LOCALS TECHNOLOGY INC.

                 Plaintiffs,

- against -

LETITIA JAMES, in her official capacity as
Attorney General of New York,

                 Defendant.

No. 22 Civ. 10195 (ALC)

### DECLARATION OF RICK SAWYER IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION

RICK SAWYER, an attorney admitted to practice before the Courts of the State of New York and this Court, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am Section Chief of the Hate Crimes and Bias Prevention Unit in the Civil Rights Bureau of the Office of the Attorney General of the State of New York ("OAG"), and an attorney for defendant LETITIA JAMES ("A.G. James"), sued in her official capacity as Attorney General of New York, in the above-captioned action.

2.     I make this declaration in opposition to Plaintiffs' Motion to Enforce the Preliminary Injunction. I am familiar with the matters set forth herein based upon my personal knowledge and on the basis of documents that have been created or reviewed by me in the ordinary course of business.

3.     In May 2022, an avowed white supremacist livestreamed the mass shooting of 10 Black people in a Buffalo, NY, grocery store. The Buffalo shooter used social media platforms to

1

**SA1**

plan his attack, broadcast it live, and amplify his specific calls for further violence against Black people.

4.      On May 18, 2022, Governor Kathy Hochul requested that the Attorney General investigate the social media platforms involved in the planning, execution, and dissemination of the Buffalo shooter's attack and calls for violence. Governor Hochul's letter invoked the Attorney General's authority to issue subpoenas under N.Y. Exec. Law § 63(8) to investigate "matters concerning the public peace, public safety, and public justice."

5.      On or about June 17, 2022, the OAG served a subpoena duces tecum upon Rumble USA Inc., making 22 separate requests, including but not limited to requests for its content moderation policies and actions it took to moderate content related to the Buffalo mass shooting. The subpoena was expressly issued pursuant to A.G. James' authority under N.Y. Exec. L. § 63(8), N.Y. Civ. R. L. § 79-n(3), and N.Y. C.P.L.R. §2302.

6.      Rumble USA Inc. did not raise any objections to the subpoena and provided responsive documents to the OAG on or about June 27, 2022.

7.      That subpoena was issued six (6) months before the effective date of N.Y. Gen. Bus. Law Section 394-ccc ("the Statute") of December 3, 2022, and eight (8) months before this Court issued a preliminary injunction against A.G. James precluding enforcement of the Statute on or about February 14, 2023 (ECF No. 29).

8.      Annexed hereto are true and correct copies of the following documents, submitted in opposition to Plaintiffs' motion to enforce preliminary injunction:

Exhibit 1.      Governor Hochul's May 18, 2022 referral letter to A.G. James, requesting, *inter alia*, "assistance [in investigating] the specific online platforms that were used to broadcast and amplify the acts and intentions of the mass shooting that took place in Buffalo on May 14,

2022 and determine whether specific companies have civil or criminal liability for their role in promoting, facilitating, or providing a platform to plan and promote violence."

Exhibit 2.     OAG's subpoena duces tecum dated June 17, 2022 to Rumble USA Inc.

Exhibit 3.     A letter from William J. Stellmach, Esq., ("Stellmach"), counsel for Rumble USA Inc., to Kim Berger, Esq. ("Berger"), Chief of the OAG's Bureau of Internet and Technology, dated June 27, 2022, transmitting documents responsive to the June 17, 2022 OAG subpoena duces tecum and advising that additional responsive documents would be produced on a rolling basis.

Exhibit 4.     An email from Stellmach to Berger dated July 21, 2022, following up on a conversation of that day and memorializing certain facts discussed, to wit, that "(1) The Buffalo shooter had neither a Rumble account, nor a Locals account under his own name; (2) The Rumble content moderation team took down any livestreams of the shooting and has taken down any identified clips of the shooting, but we do not have records sufficient to provide more metrics around when or how frequently those deletions took place; and (3) At an earlier point in time, company management reviewed certain posts which included commentary regarding the shooting and concluded that those posts were not inconsistent with Rumble's Terms and Conditions."

Exhibit 5.     A letter from A.G. James to Michael Ellis, Esq., General Counsel and Corporate Secretary to Rumble, Inc., dated October 12, 2023, in which OAG requested that Rumble "promptly respond to the following questions [numbered 1 through 11] by October 20, 2023."

Exhibit 6.     A press release dated October 13, 2023 issued by OAG advising, *inter alia*, that A.G. James "sent a series of letters to social media companies requesting they provide detailed explanations of the steps they are taking to stop the spread of hateful content encouraging violence against Jewish and Muslim people and institutions in the wake of terrorist attacks in Israel."

Exhibit 7.       A letter dated October 18, 2023 from Jay Diaz, Esq. ("Diaz"), and Daniel

Ortner, Esq. ("Ortner"), of the Foundation for Individual Rights and Expression ("FIRE"), counsel

for Plaintiffs, to Judith Vale, Esq. ("Vale"), a Deputy Solicitor General in the OAG's Appeals and

Opinions Bureau, and Jordan Adler, Esq. ("Adler"), a Senior Enforcement Counsel in the OAG's

Bureau of Internet and Technology, setting forth a demand for "the immediate and unequivocal

retraction of [OAG's] October 12, 2023 … letters to six internet platforms."

Exhibit 8.       A letter dated October 19, 2023 from Adler to Diaz and Ortner, advising

that OAG "hereby withdraws the voluntary requests set forth in its October 12, 2023 letter to

Rumble." [This is exhibit is also attached as Exhibit E to the Ortner Declaration, ECF No. 47-5.]

Exhibit 9.       A press release dated October 20, 2023 issued by FIRE and entitled

"Victory: A Day after FIRE's intervention, New York rescinds letter demanding social media

platform Rumble censor users over Israel-Hamas war."

Dated: New York, New York
        December 15, 2023

                                /s/ Rick Sawyer
                                Rick Sawyer
                                Section Chief, Hate Crimes and Bias Prevention Unit
                                Civil Rights Bureau
                                Office of the New York State Attorney General

**SA4**

# Exhibit 1



State of New York

# Executive Chamber

Albany 12224

May 18, 2022

Via Electronic Mail

The Honorable Letitia James
Attorney General of the State of New York
State Capitol
Albany, New York 12224

Re: Executive Law Section 63(8) Referral

Attorney General James:

I am writing in the wake of the mass shooting in Buffalo to request your assistance in investigating the role of social media platforms in this horrific crime. Publicly available information suggests that the alleged perpetrator was active on social media, especially on sites used by white supremacists threatening violence. When the alleged perpetrator started shooting, he livestreamed the incident. The alleged perpetrator himself, in now publicly available material, describes the ways in which social media radicalized him through exposure to violent rhetoric and previous attacks. The alleged perpetrator's manifesto bore the marks of similar writings of other violent white supremacists, including the El Paso and New Zealand killers, which have circulated on platforms on the Internet. We need to respect individual First Amendment rights, but when individuals use online platforms to promote and plan violence, it raises questions about the role of social media platforms in the promotion of the violence. These questions need to be answered.

New York State Executive Law Section 63(8) authorizes the Governor to direct the Attorney General to investigate matters concerning public peace, public safety, and public justice, to subpoena witnesses, and to compel the production of documents. Pursuant to that authority and in accordance with state and federal law, I am seeking your assistance to investigate the specific online platforms that were used to broadcast and amplify the acts and intentions of the mass shooting that took place in Buffalo on May 14, 2022 and determine whether specific companies have civil or criminal liability for their role in promoting, facilitating, or providing a platform to plan and promote violence. The investigation should include, but not be limited to a review of those platforms that may have been used to stream, promote, or plan this tragedy, including but not limited to Twitch (owned by Amazon), 4chan, 8chan, and Discord.

**SA6**

Page 2
May 18, 2022
Executive Law Section 63(8) Referral


  Given the urgency of this situation, we expect that you will undertake this investigation with all due haste and in coordination with the ongoing investigations of the Buffalo tragedy by the Federal Bureau of Investigation, the Buffalo Police Department, the Erie County District Attorney's Office, and any other applicable federal, state, or local law enforcement.

  We look forward to receiving updates on your investigation, as provided for in Executive Law § 63(8), and a final report on the findings of your investigation. We are grateful for your partnership on these critical efforts.


     Sincerely,

     *Kathy Hochul*

     Kathy Hochul
     Governor

# **Exhibit 2**



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

**SUBPOENA DUCES TECUM**
**THE PEOPLE OF THE STATE OF NEW YORK**
<u>**GREETINGS**</u>

**TO**:
Rumble USA Inc.
c/o Corp2000
838 Walker Road, Suite 21-2
Dover, DE
19904

**YOU ARE HEREBY COMMANDED**, pursuant to Executive Law § 63(8) and Civil Rights Law § 79-n(3), and § 2302(a) of the New York Civil Practice Law and Rules, to deliver and turn over to Letitia James, the Attorney General of the State of New York, or a designated Assistant Attorney General, on ***the 7th day of July, 2022, by 5:00 p.m.***, or any agreed upon adjourned date or time, at 28 Liberty Street, New York, New York 10005, all documents and information requested in the attached Schedule in accordance with the instructions and definitions contained therein.

**PLEASE TAKE NOTICE** that the Attorney General deems the documents and information requested by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to deliver the documents and information requested in the attached Schedule on the date, time and place stated above or on any agreed upon adjourned date or time, may subject You to penalties and other lawful punishment under Executive Law § 63(8), § 2308 of the New York Civil Practice Law and Rules, and/or other statutes.

**WITNESS, The Honorable Letitia James,** Attorney General of the State of New York, this 17th day of June 2022.

By: _____
Kim Berger
Bureau Chief
Bureau of Internet & Technology
28 Liberty Street
New York, NY 10005
(212) 416-8456 / kim.berger@ag.ny.gov

<u>SCHEDULE</u>

**A. General Definitions and Rules of Construction**

1.    "All" means each and every.

2.    "Any" means any and all.

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Subpoena all information or Documents that might otherwise be construed to be outside of its scope.

4.    "Communication" means any conversation, discussion, letter, email, memorandum, meeting, note or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing.

5.    "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

6.    "Custodian" means any Person or Entity that, as of the date of this Subpoena, maintained, possessed, or otherwise kept or controlled such Document.

7.    "Document" is used herein in the broadest sense of the term and means all records and other tangible media of expression of whatever nature however and wherever created, produced or stored (manually, mechanically, electronically or otherwise), including without limitation all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, Slack messages, Teams messages, text messages, iMessages or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, code (e.g., C/C++/C#, R, SQL, Python, Java, JavaScript, Visual Basic, .NET, Swift ), algorithms, code repositories (e.g. GitHub), commit messages, audit logs, data or databases (e.g., Oracle, SQL-based, MongoDB, IMB DB2, Access, Cassandra, Redis), plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices and summaries.  Any non-identical version of a Document constitutes a separate Document within this definition, including without limitation drafts or copies bearing any notation, edit, comment, marginalia, underscoring, highlighting, marking, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents.  In the case of Documents bearing any notation or other marking made by highlighting ink, the term Document means the original version bearing the highlighting ink, which

original must be produced as opposed to any copy thereof.

8. "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

9. "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to request the Document's production through subpoena or otherwise, including but not limited to: (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; and (d) Document author(s), addressee(s) and recipient(s). In lieu of identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and identification of each Person You believe to have received a copy of the Document.

10. "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

11. "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) of employment, telephone number(s), e-mail address(es), mailing addresses and physical address(es).

12. "Include" means include without limitation, as in "includes but is not limited to."

13. "Person" means any natural person, or any Entity.

14. "Sent" or "received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

15. "Subpoena" means this subpoena and any schedules or attachments thereto.

16. The use of the singular form of any word used herein shall include the plural and vice versa. The use of any tense of any verb includes all other tenses of the verb.

## B. Particular Definitions

1. "Respondent," "You," "Your," or "Rumble" means Rumble USA Inc. and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

## C. Instructions

1. <u>Preservation of Relevant Documents and Information; Spoliation.</u>  You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this Subpoena from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence.  No agreement, written or otherwise, purporting to modify, limit or otherwise vary the terms of this Subpoena, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations.  Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law.  No agreement purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

2. <u>Possession, Custody, and Control.</u>  The Subpoena calls for all responsive Documents or information in Your possession, custody or control.  This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, employees, agents, representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information.  If Documents or information responsive to a request in this Subpoena are in Your control, but not in Your possession or custody, You shall promptly Identify the Person with possession or custody.

3. <u>Documents No Longer in Your Possession.</u>  If any Document requested herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that:  (a) describes in detail the nature of such Document and its contents; (b) Identifies the Person(s) who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the date(s) on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed or transferred; and if such Document has been destroyed or transferred, the conditions of and reasons for such destruction or transfer and the Identity of the Person(s) requesting and performing such destruction or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

4. <u>No Documents Responsive to Subpoena Requests.</u>  If there are no Documents responsive to any particular Subpoena request, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the Subpoena request concerned.

5. <u>Format of Production.</u>  You shall produce Documents and information responsive

to this Subpoena in the format requested by the Office of the New York State Attorney General. Productions in electronic format shall meet the specifications set out in Attachments 1 and 2.

6.  <u>Existing Organization of Documents to be Preserved.</u>  Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization. Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document. Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

7.  <u>Manner of Compliance – Custodians/Search Terms/Technology-Assisted Review.</u> Prior consultation with the Office of the Attorney General is required concerning selection of custodians for document searches (whether electronic or otherwise) or for use of search term filters, predictive coding or other forms of technology-assisted review. The Office of the Attorney General reserves the right to approve, disapprove, modify or supplement any proposed list of custodians, search terms, and/or review methodology. The selection or use of custodians, search term filters, and/or technology-assisted review in no way relieves You of Your obligation to fully respond to these requests for Documents or information<u>.</u>

8.  <u>Document Numbering.</u>  All Documents responsive to this Subpoena, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production. Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

9.  <u>Privilege Placeholders.</u>  For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

10. <u>Privilege.</u>  If You withhold or redact any Document responsive to this Subpoena on ground of privilege, statute, or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating: (a) the document control number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipient(s) of the Document;

(e) the general subject matter of the Document; and (f) the legal ground for withholding or redacting the Document.  If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

11.     Your Production Instructions to be Produced.  You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this Subpoena.  For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

12.     Cover Letter, Index, and Identifying Information.    Accompanying any production(s) made pursuant to this Subpoena, You shall include a cover letter that shall at a minimum provide an index containing the following: (a) a description of the type and content of each Document produced therewith; (b) the paragraph number(s) of the Subpoena request(s) to which each such Document is responsive; (c) the Identity of the Custodian(s) of each such Document; and (d) the document control number(s) of each such Document.  As further set forth in Attachment 2, information must also be included in the metadata and load files of each production concerning the identity of each Document's custodian, as well as information identifying the particular Document requests and/or information to which each document is responsive.

13.     Affidavit of Compliance.  A copy of the Affidavit of Compliance provided herewith shall be completed and executed by all natural persons supervising or participating in compliance with this Subpoena, and You shall submit such executed Affidavit(s) of Compliance with Your response to this Subpoena.

14.     Identification of Persons Preparing Production.  In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this Subpoena.  You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this Subpoena occurred.  You shall further Identify all other natural person(s) able competently to testify:  (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

15.     Continuing Obligation to Produce.  This Subpoena imposes a continuing obligation to produce the Documents and information requested.  Documents located or created, and information learned, acquired or created, at any time after Your response is due shall be promptly produced at the place specified in this Subpoena.

16.     No Oral Modifications.  No agreement purporting to modify, limit or otherwise vary this Subpoena shall be valid or binding, and You shall not act in reliance upon any such agreement, unless an Assistant Attorney General confirms or

acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

17. <u>Stored Communications Act.</u> If You are a service which provides (a) the ability to send or receive wire or electronic communication to users; or (b) computer storage or processing services by means of an electronic communications system available to the public, the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, may protect certain customer/subscriber communications, records, and other information pertaining to customers/subscribers that You maintain, other than the (a) name; (b) address; (c) local and long distance telephone connection records, or records of session times and durations; (d) length of service (including start date) and types of service utilized; (e) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and (f) means and source of payment for such service (including any credit card or bank account number), of a subscriber to or customer of such service. 18 U.S.C. § 2703(c)(2). This Subpoena should not be interpreted to request information protected by the SCA. Such protected information need not be produced in response to this Subpoena. If You have any questions regarding whether certain information is protected by the SCA, You should contact an attorney.

18. <u>Time Period.</u> Unless otherwise specified, the time period covered by this Subpoena shall be from **<u>January 1, 2020</u>** through the present.

### D. Documents to be Produced

1.  All written policies and procedures in effect at any point during the relevant period that are or were either external-facing or for internal purposes, concerning moderation of user-generated content, including but not limited to videos and livestreams.

2.  All written policies and procedures in effect at any point during the relevant period that are or were either external-facing or for internal purposes, concerning any process or method of content moderation, including but not limited to human review, automated review, and content hashing.

3.  All written policies and procedures in effect at any point during the relevant period that are or were either external-facing or for internal purposes, concerning the eligibility of any user-generated content or any user account for any creator monetization product.

4.  All written policies and procedures in effect at any point during the relevant period that are or were either external-facing or for internal purposes, concerning moderation of third-party advertising on Your services.

5.  All documents concerning requests by users to take any moderation action with respect to any user-generated content concerning the mass shooting in Buffalo, New York on May 14, 2022 (the "Buffalo Mass Shooting").

6.  Documents sufficient to show the number of videos related to the Buffalo Mass Shooting that have been deleted, hidden, rendered publicly inaccessible, or otherwise obscured in any way, and for each such video, the date and time uploaded, the specific actions taken to delete, hide, render inaccessible, or otherwise obscure the video and/or the account, the number of impressions the video received, the number of times the video was replied to, reshared, or liked, and the date and time of any such action to obscure the video in any way.

7.  Documents sufficient to show the number of videos related to the Buffalo Mass Shooting that have been reported or flagged by users or by You for potential moderation action but which were not deleted, hidden, rendered publicly inaccessible, or otherwise obscured in any way, and for each such video, the date and time uploaded, the date and time each such video was reported or flagged for review, whether the request came from a user or internally, the number of impressions the video received, the number of times the video was replied to, reshared, or liked, and the date and time You reviewed each such video.

8.  Documents sufficient to show the number of accounts suspended or terminated for uploading content related to the Buffalo Mass Shooting, and for each account the date and time of the suspension or termination, the number of followers the account had at the time of suspension or termination, and the number of users the account followed at the time of suspension or termination.

**SA16**

9.  Documents sufficient to show all methods You use to identify user-generated content concerning the Buffalo Mass Shooting.

10. Documents sufficient to show the processes used to conduct, and the results of, all audits or assessments of any algorithms concerning moderation of user-generated content related to the Buffalo Mass Shooting, hate speech, terrorism, or violent extremism.

11. Documents sufficient to show the number of videos that have been deleted, hidden, rendered publicly inaccessible, or otherwise obscured in any way because the video concerned terrorism, violent extremism, mass shooting events, or hate crimes, and for each such video the date and time uploaded, and the date and time of any such action to obscure the video in any way.

12. Documents sufficient to show the number of accounts suspended or terminated for uploading videos related to terrorism, violent extremism, mass shooting events, or hate crimes, and for each account the date and time of suspension or termination, the number of followers the account had at the time of suspension or termination, and the number of users the account followed at the time of suspension or termination.

13. All written policies and procedures in effect at any point during the relevant period that are or were either external-facing or for internal purposes, concerning the serving of third-party advertisements in connection with videos and/or searches related to the Buffalo Mass Shooting, terrorism, violent extremism, mass shooting events, or hate crimes.

14. Documents sufficient to show the date and time when third-party advertisements were turned off with respect to videos and/or searches concerning the Buffalo Mass Shooting.

15. Documents sufficient to show the total number of third-party advertisements served in connection with searches related to the Buffalo Mass Shooting, and the amount of revenue generated by those advertisements.

16. All communications with the Global Internet Forum to Counter Terrorism ("GIFCT") or its network members concerning the Buffalo Mass Shooting, including all data submitted to or received from the GIFCT or its network members.

17. All communications with the GIFCT or its network members concerning its Content Incident Protocol.

18. All communications with the GIFCT or its network members concerning the prevention of terrorism or violent extremism.

19. All communications between You and U.S. or European law enforcement concerning terrorism or violent extremism, including any bulletins concerning

specific acts or individuals and any general guidance concerning the prevention of terrorism or violent extremism.

20. All training materials provided to Your employees, contractors, subcontractors, or other agents concerning content moderation, hate speech, or the prevention of terrorism or violent extremism.

21. All training materials provided to Your employees, contractors, subcontractors, or other agents concerning the prevention of illegal arms sales or the promotion and facilitation of illegal weapons modifications.

22. Any materials provided to Your employees, contractors, subcontractors, or other agents by third-party consultants or other contractors concerning content moderation, hate speech, terrorism, or violent extremism.

**ATTACHMENT 1**

**Electronic Document Production Specifications**

Unless otherwise specified and agreed to by the Office of the Attorney General, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions. Any questions regarding electronic document production should be directed to the Assistant Attorney General whose telephone number appears on the subpoena.

1. <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

   A. ***Native Files.*** Native format versions of produced documents that are not redacted, named by their first Bates number.

   B. ***Single-Page Image Files.*** Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

   C. ***Extracted or OCR Text Files.*** Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

   D. ***Metadata Load File.*** A delimited text file that lists in columnar format the required metadata for each produced document.

   E. ***Opticon Load File.*** A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

2. <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:
   • data\ (contains production load files)
   • images\ (contains single-page TIF files, with subfolder organization)
   \0001, \0002, \0003…
   • natives\ (contains native files, with subfolder organization)
   \0001, \0002, \0003…
   • text\ (contains text files, with subfolder organization)
   \0001, \0002, \0003…

3. <u>De-Duplication</u>. You must perform de-duplication of stand-alone documents and email families against any prior productions pursuant to this or

previously related subpoenas only within each custodian (not across all custodians).

4.    Paper or Scanned Documents.  Documents that exist only in paper format must be scanned to TIF files and OCR'd.  The resulting electronic files should be pursued in Concordance format pursuant to these instructions.  You must contact the Assistant Attorney General whose telephone number appears on the subpoena to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

5.    Structured Data.  Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the subpoena.

    A.    Relational Databases

        1.    Database tables should be provided in comma-separated or other machine-readable, non-proprietary format, with each table in a separate data file.  Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.

        2.    Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.

        3.    Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

6.    Media and Encryption.  All document sets over 15 GB must be produced on CD, DVD, or hard-drive media.  All production media must be encrypted with a strong password, which must be delivered independently from the production media.  Document sets under 2 GB may be delivered electronically.  The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties server.

7.    Use of Search Terms or Predictive Coding.  Before using software or technology (including search terms, predictive coding, de-duplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this Request, You must submit a written description of the method(s) proposed to conduct any part of Your search and obtain the prior consent of the NYOAG to the use of such methods.

A.   For any process that relies on search terms to identify or eliminate documents, the Company must submit: (a) a list of proposed terms; (b) a tally of all the terms that appear in the collection and the frequency of each term that includes (1) how many documents have 'hit' or have come up responsive to each term, (2) for documents that have hit on a term the associated number of so-called documents, and (3) the number of unique documents that have hit on each term (documents that are responsive to that term but not others); (c) a list of stop words and operators for the platform being used; and, (d) a glossary of industry and company terminology, acronyms, or jargon used.

B.   If you employ any process that relies upon technology assisted review, computer learning, analytics, or predictive coding to identify or eliminate documents, you must disclose the technology and process to be employed in advance and also include (a) the selection method and total size of the initial review universe; (b) the selection method employed for training documents, confirmation that subject-matter experts will be reviewing the seed set and training rounds; (c) the criteria upon which you will determine that you will stop the process (e.g. if based on stability, the recall, precision, and confidence-level (or equivalent) statistics); and, (c) a validation process that allows NYOAG representatives to review statistically-significant random or selected samples of documents categorized as non-responsive documents by the algorithm.

8.   Production File Requirements.

A.   ***Native Files***
- Documents that do not contain redacted information must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, and not additionally as singlepage image files, you must assign a single document-level Bates number and optionally provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.
- You may be required to supply a software license for proprietary documents produced only in native format.

B.   **Single-Page Image Files (Petrified Page Images)**
   • Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files.
   • Image documents that exist only in non-TIF formats must be converted into TIF files.
   • For documents produced only in native format, you may provide a single, TIF placeholder that states "Document produced only in native format."
   • Each single-page TIF file must be endorsed with a unique Bates number.
   • The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
   • Required image file format: ○ CCITT Group 4 compression ○ 2-Bit black and white ○ 300 dpi ○ Either .tif or .tiff file extension.
   • TIF files must be divided into subfolders containing no more than 5000 files. Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

C.   **Extracted or OCR Text Files**
   • You must produce individual document-level text files containing the full extracted text for each produced document.
   • When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
   • The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.
   • Text files must be divided into subfolders containing no more than 5000 files.

D.   **Metadata Load File**
   • Required file format: ○ UTF-8
      ○ .dat file extension
      ○ Field delimiter:     (ASCII decimal character 20)
      ○ Text Qualifier: þ (ASCII decimal character 254). Multiple value field delimiter: ; (ASCII decimal character 59)
   • The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 2.
   • Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
   • *Note:* All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number). The metadata load file

**SA22**

must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.
- Accepted date formats: ○ mm/dd/yyyy ○ yyyy/mm/dd ○ yyyymmdd
- Accepted time formats:
  ○ hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
  ○ hh:mm:ss:mmm

E. ***Opticon Load File*** Required file format:
  ○      Field delimiter: , (ASCII decimal character 44)
  ○ No Text Qualifier
  ○      .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
  ○ ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
  ○ VOLUME – this value is optional and may be left blank.
  ○ RELATIVE PATH – the file path to each single-page image file on the production media.
  ○ DOCUMENT BREAK – defines the first page of a document.  The only possible values for this field are "Y" or blank.
  ○ FOLDER BREAK – defines the first page of a folder.  The only possible values for this field are "Y" or blank.
  ○ BOX BREAK – defines the first page of a box.  The only possible values for this field are "Y" or blank.
  ○ PAGE COUNT – this value is optional and may be left blank.
- ***Example*:**
  ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
  ABC00002,,IMAGES\0001\ABC00002.tif,,,,
  ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
  ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

**ATTACHMENT 2**

**Required Fields for Metadata Load File**

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004… |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on the production media. | .\Text_Folder\Folder\...\BEGDOC.txt |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record.  For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number… |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name… |
| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |

---

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

SA24

| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
|---|---|---|
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; … |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date and time that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date and time that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;… |
| NUMATTACH | Number of attachments. | |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder, source, and file path of the produced document. | Drive:\Folder\…\…\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel,  Corel WordPerfect… |
| TITLE | Document title (if entered). | |
| AUTHOR | Name of the document author. | |

| REVISION | Number of revisions to a document. | 18 |
|---|---|---|
| LAST MODIFIED BY | The last user/person to modify the document | |
| DATECREATED | Date and time that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date and time that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| PGCOUNT | Number of pages per document. | |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | |
| SHA1HASH | SHA1 hash value | |
| MSGINDEX | Email message ID | |
| CONVERSATIONINDEX | Email Conversation Index | |
| HIDDEN CONTENT | Any track changes, mark-ups, or other notes | |

## AFFIDAVIT OF COMPLIANCE WITH SUBPOENA

State of _____  
County of _____   }

I, _____, being duly sworn, state as follows:

1. I am employed by Respondent in the position of _____ _____;

2. Respondent's productions and responses to the Subpoena of the Attorney General of the State of New York, dated _____, 20_____ (the "Subpoena") were prepared and assembled under my personal supervision;

3. I made or caused to be made a diligent, complete and comprehensive search for all Documents and information requested by the Subpoena, in full accordance with the instructions and definitions set forth in the Subpoena;

4. Respondent's productions and responses to the Subpoena are complete and correct to the best of my knowledge and belief;

5. No Documents or information responsive to the Subpoena have been withheld from Respondent's production and response, other than responsive Documents or information withheld on the basis of a legal privilege or doctrine;

6. All responsive Documents or information withheld on the basis of a legal privilege or doctrine have been identified on a privilege log composed and produced in accordance with the instructions in the Subpoena;

7. The Documents contained in Respondent's productions and responses to the Subpoena are authentic, genuine and what they purport to be;

8. Attached is a true and accurate record of all persons who prepared and assembled any productions and responses to the Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be; and

1

**SA27**

9.    Attached is a true and accurate statement of those requests under the Subpoena as to which no responsive Documents were located in the course of the aforementioned search.


_____          _____
          Signature of Affiant                                    Date


_____
        Printed Name of Affiant


*       *       *


Subscribed and sworn to before me this _____ day of _____, 20___.


_____, Notary Public


My commission expires: _____

# **Exhibit 3**

# WILLKIE FARR & GALLAGHER LLP

William J. Stellmach
202-303-1130
wstellmach@willkie.com

1875 K Street, N.W.
Washington, DC 20006-1238
Tel: 202 303 1000
Fax: 202 303 2000

June 27, 2022

**Via SECURE FILE TRANSFER**

Kim Berger
Bureau Chief
Bureau of Internet & Technology
State of New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8456/ kim.berger@ag.ny.gov

Re:     *In the Matter of Rumble USA Inc.*

To Whom It May Concern:

On behalf of Rumble USA Inc. ("Rumble"), I write in response to the June 17, 2022 Subpoena (the "Subpoena") directed to Rumble.

Rumble submits this initial production of certain policies and documents responsive to Subpoena Requests 1-4 and bearing Bates numbers RUMBLE00000001 through RUMBLE00000035 via Secure File Transfer, as requested. This production is stamped "CONFIDENTIAL." We will communicate the password to you separately. As discussed, Rumble will produce additional documents, as appropriate, on a rolling basis and appreciate adjournment of the July 7, 2022 return date.

If you have any questions about the foregoing, please do not hesitate to contact me at 202-303-1130 or wstellmach@willkie.com.

Sincerely,

/s/ William J. Stellmach

William J. Stellmach

SA30

Case 1:22-cv-10195-ALC Document 49-4 Filed 12/15/23 Page 14 of 2

# Exhibit 4

| **From:** | Stellmach, William |
|-----------|-------------------|
| **To:** | Berger, Kim |
| **Cc:** | Sandoloski, Sean |
| **Subject:** | Rumble |
| **Date:** | Thursday, July 21, 2022 4:11:28 PM |

**[EXTERNAL]**

Good afternoon, Kim.

Thank you for speaking with us this morning. As you requested, we're writing to memorialize our understanding that:

> (1) The Buffalo shooter had neither a Rumble account, nor a Locals account under his own name;
>
> (2) The Rumble content moderation team took down any livestreams of the shooting and has taken down any identified clips of the shooting, but we do not have records sufficient to provide more metrics around when or how frequently those deletions took place; and
>
> (3) At an earlier point in time, company management reviewed certain posts which included commentary regarding the shooting and concluded that those posts were not inconsistent with Rumble's Terms and Conditions.

Again, if there is any content or links which your Office would like to identify for our client to review, please let us know and our client can then make an assessment.

If you have any questions, or wish to discuss further, please let us know.

Best,
Bill

**William J. Stellmach**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1130 | Mobile: +1 202 650 7986
wstellmach@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# **Exhibit 9**



## VICTORY: A day after FIRE's intervention, New York rescinds letter demanding social media platform Rumble censor users over Israel-Hamas war

 Listen to this article

by **FIRE**      October 20, 2023

- New York Attorney General Letitia James rescinded her letter to Rumble demanding social media platforms censor content related to the Israel-Hamas war that "may incite violence."
- The AG's letter violated the First Amendment and a federal court order blocking enforcement of New York's Online Hate Speech law.

NEW YORK, N.Y., Oct. 20, 2023 — Less than 24 hours after the Foundation for Individual Rights and Expression **called on** New York Attorney General Letitia James to retract a letter pressuring private social media platforms to censor protected speech, she **rescinded** the demand as it pertained to FIRE plaintiff Rumble.

On Oct. 12, the attorney general **sent a letter** demanding that social media platforms, including Rumble, Meta, and Reddit, provide information about what they are doing to "stop the spread of hateful content" related to the Israel-Hamas war and report back to her about their editorial policies and practices.

"We're glad the attorney general is starting to back down," said FIRE attorney Daniel Ortner. "Her letter was ill-advised and violated a court order."

In light of the war between Israel and Hamas, the attorney general demanded that six platforms answer a list of questions about their content-moderation policies and practices. James expressed her concern about posts that "may incite violence against Jewish and Muslim people."

♥ Become a member

**SA34**

The letter, titled "Concerns Regarding Recent Surge in Hateful and Violent Rhetoric," cites platforms' own recent calls for violence" and tells them to "describe in detail" everything from their existing content-moderation policies, to their process for identifying and blocking problematic posts and banning their authors. The **attorney general's press release** goes further — demanding that the platforms "prohibit the spread of violent rhetoric" and "hateful content," and vowing to "hold social media companies accountable." The deadline for the platforms to respond is today, Oct. 20.

The inquiries are at odds with longstanding Supreme Court precedent that under the First Amendment, "violent" or "hateful" speech is protected. Even speech that "may incite violence" is protected unless a speaker intends to cause imminent violence and the speech is likely to cause imminent violence — like when a speaker works a mob into a frenzy and tells them to go burn down a nearby building. There is no "hateful" or "violent" speech exception to the First Amendment.

In sending the letter, the attorney general also did exactly what a federal court told her *not* to do. Last December, FIRE **brought a lawsuit** against Attorney General James on behalf of Rumble, Locals, and blogger Eugene Volokh over a New York law that forces websites and apps to address "hateful" online speech.

FIRE successfully secured a preliminary injunction which forbids the attorney general from enforcing the law — against Rumble or anyone else. The attorney general's Oct. 12 demand letter violated this injunction by implementing the statute and pressuring Rumble and others to censor platform users. FIRE's **response** threatened further legal action if she did not retract the letters by Oct. 20.

"Rescinding the letter to Rumble is not enough. By retracting the letter for only one of the platforms, the attorney general is still flouting the court's order," said FIRE senior attorney Jay Diaz. "We hope the court will intervene to ensure Attorney General James does not continue violating the injunction and the First Amendment, now and in the future."

In the last two weeks, powerful U.S. politicians across the political spectrum have called on social media to limit protected speech on their platforms. **Sen. Michael Bennet** (D-Colo.), **Rep. Cathy McMorris Rodgers** (R-Wash.), and **Rep. Frank Pallone** (D-N.J.) have all demanded social media platforms take action to remove or prohibit protected speech related to the Israel-Hamas war.

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending and sustaining the individual rights of all Americans to free speech and free thought — the most essential qualities of liberty. FIRE educates Americans about the importance of these inalienable rights, promotes a culture of respect for these rights, and provides the means to preserve them.

CONTACT:

Katie Kortepeter, Communications Campaign Manager, FIRE: 215-717-3473; media@thefire.org